UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MONTARICO JOHNSON,

   Petitioner,

         v.

UNITED STATES OF AMERICA,

   Respondent.

Civil No. 14-cv-896-JPG

Criminal No. 12-cr-40004-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Montarico Johnson's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).

**I.  Background**

On June 26, 2012, a jury found the petitioner guilty of one count of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 1) and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 2).  On September 27, 2012, the Court sentenced the petitioner to serve 210 months in prison on Count 1 and 120 months on Count 2.  The petitioner appealed his sentence, and on July 16, 2014, the Court of Appeals affirmed his conviction and prison term but vacated several conditions of his supervised release and remanded the case for further proceedings with respect to supervised release conditions.  On March 31, 2015, the Court entered an amended judgment that changed nothing but the supervised release conditions, and no party appealed that judgment.

**II.  § 2255 Motion**

Johnson filed this § 2255 motion on August 15, 2014, while this case was on remand and Johnson was awaiting a new sentencing hearing.  Rather than dismiss Johnson's § 2255 motion as premature, the Court stayed the case until Johnson's criminal judgment became final.  It is now

final, so this § 2255 case may proceed.

In his § 2255 motion, the petitioner argues that his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when he:

Ground 1: Failed to investigate and subpoena Carrie Davis, Timothy "last name unknown" ("LNU") and Marcus "Prince" Smith;

Ground 2: Failed to file pretrial motions to strike surplusage from the indictment, to remand or dismiss;

Ground 3: Conceded the petitioner's guilt in his opening statement and closing argument, and improperly argued the issue of jurisdiction to the jury;

Ground 4: Elicited propensity evidence, an alleged home invasion, from a Government witness, and failed to ask for a cautionary or limiting instruction;

Ground 5: Failed to request limiting instruction for evidence of prior felony conviction for aggravated battery, and failure to object to evidence of prior possession of a firearm; and

Ground 6: Made the foregoing errors that cumulatively prejudiced him.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court has determined that it is plain from the motion and the record of the prior proceedings that the petitioner is not entitled to relief on Grounds 1, 2 and 3.

### III.   Analysis

#### A.   § 2255 Standard

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.  However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting

*Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2830 (2014)), *cert. denied*, 135 S. Ct. 1574 (2015). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

A § 2255 motion does not substitute for a direct appeal. A defendant cannot raise in a § 2255 motion constitutional issues that he could have but did not raise in a direct appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000). The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum. Such claims are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding. *Massaro*, 538 U.S. at 504-05; *Fountain*, 211 F.3d 433-34. In addition, the district court before which the original criminal trial occurred, not an appellate court, is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and potential prejudice that stemmed from counsel's performance. *Massaro*, 538 U.S. at 504-05. For these reasons, ineffective assistance of counsel claims, regardless of their substance, may be raised for the first time in a § 2255 petition.

  B.  <u>Ineffective Assistance of Counsel Standard</u>

All of the grounds for relief Johnson asserts are based on alleged instances of ineffective assistance of counsel. The Sixth Amendment provides that "[i]n all criminal prosecutions, the

3

accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland*, 466 U.S. at 689. The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *Jones*, 635 F.3d at 915; *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir.

2006). "A reasonable probability is defined as one that sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

  C.  Grounds for Relief

Ground 1: Failure to Investigate and Subpoena Witnesses

  Johnson claims his counsel was constitutionally ineffective for failing to investigate Carrie Davis, Timothy LNU and Marcus "Prince" Smith and to subpoena them to testify at trial. The evidence at trial showed Timothy LNU and Smith both had contact with the Government's confidential source, Ronnie Bridges, before a controlled buy in which Bridges purchased drugs and a gun from Johnson but after the controlled observation began. Specifically, Timothy, Bridges' developmentally challenged cousin, approached Bridges' car while Bridges was waiting to meet with Johnson, and Bridges testified he asked Timothy to go across the street to purchase a cigar and soda pop for him. Bridges testified that Timothy did not give him any drugs. Tr. 43. Smith also approached Bridges to try to purchase marihuana from him, and Bridges testified that he tried to put him off for the moment by telling him he would have to wait and that Bridges needed to "see what [his] people would do." Tr. 44. Carrie Davis is not mentioned in the trial transcript, but Johnson alleges in his motion that Bridges called Davis to meet at some point after the controlled procedure began. Johnson notes that Bridges was not searched by law enforcement after these contacts and suggests these three witnesses played some role in supplying the crack cocaine that the Government retrieved from Bridges after the controlled buy.

  Johnson is not entitled to § 2255 relief on this ground because he has not sufficiently alleged prejudice from his counsel's failure to investigate these three individuals and to call them to testify at trial. As a preliminary matter, Bridges admitted during his testimony that he had been a drug dealer in the past, that he knew how to manufacture crack cocaine, that he had been

5

convicted of conspiracy to distribute crack cocaine, and that he had continued to deal drugs after his release from prison. Any impeachment information Smith could have provided about Bridges' being a convicted drug dealer would have been redundant and would not have had a reasonable probability of causing the jury to disbelieve Bridges' testimony or to arrive at a different verdict.

To the extent Johnson believes the three witnesses would have provided evidence that one of them gave Bridges crack cocaine, Bridges' assertions to that effect are pure speculation. When a petitioner accuses his counsel of failing to investigate his case, in order to establish prejudice he must point to "sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (internal quotations and citation omitted); *accord Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004). He cannot rely on vague allegations that the investigation was insufficient or would have yielded favorable evidence. *See Hardamon*, 319 F.3d at 951. Similarly, when a § 2255 petitioner faults his attorney for failing to present evidence at trial, he bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence would have had a reasonable probability of changing the result. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003); *see, e.g., United States v. Stuart*, 773 F.3d 849, 852-53 (7th Cir. 2014). Thus, to prevail in his argument, Johnson must show what evidence his counsel should have discovered in an investigation and introduced at trial, and he must explain how that evidence would have had a reasonable probability of changing the outcome of the trial.

Johnson falls short in this regard. He has not provided the comprehensive showing of what his counsel would have uncovered in an investigation of Davis, Timothy and Smith, how they

would have testified at trial, or how that testimony would have had a reasonable chance at changing the outcome of the trial in light of the recorded drug transaction and Johnson's subsequent recorded admissions. His unsupported allegations are not enough to warrant further inquiry into whether § 2255 relief is warranted on Ground 1.

Ground 2: Failure to File Pretrial Motions

Motion to Strike Surplusage: Johnson also faults his counsel for failing to file a motion to strike surplusage from the indictment.[1] He argues his counsel should have asked the Court to strike the citation in Count 2 of the indictment to "924(e)." The citation is contained in the final phrase of Count 2, which states that Johnson's possession of a pistol after having been convicted of aggravated battery was "all in violation of Title 18, United States Code, Sections 922(g)(l), 924(a)(2), and 924(e)." Sup. Ind. 2. Those familiar with criminal law might recognize this as a reference to 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"). The ACCA increases the mandatory minimum sentence for felon in possession of a firearm to fifteen years if the offender has three prior convictions for a violent felony or a serious drug offense. *See* 18 U.S.C. § 924(e)(1). Johnson argues that this reference signaled to the jury that he had three prior felony convictions when, in fact, he did not. He believes he was prejudiced from the inclusion of the reference to the ACCA in Count 2 and that counsel should have moved to strike the reference as surplusage.

Federal Rule of Criminal Procedure 7(d) allows the Court discretion, on the defendant's motion, to strike surplusage from the indictment. "Surplusage should not be stricken unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial."

---

[1] Johnson was actually convicted of the charges in the *superseding* indictment, but for simplicity's sake, the Court will simply refer to the superseding indictment as the indictment.

*United States v. Peters*, 435 F.3d 746, 753 (7th Cir. 2006) (internal quotations omitted).

Although the Court agrees that reference to the ACCA might have been surplusage, Johnson has not sufficiently alleged any prejudice from his counsel's failure to ask the Court to strike the reference to § 924(e) in the indictment that was provided to the jury during its deliberations. First, as the Court noted above, *those familiar with criminal law might* have recognized a citation to the ACCA, but there is no indication any juror made such a connection, much less that any juror knew the ACCA only applied to those with three prior felony convictions for violent crimes or serious drug offenses. In addition, other than the establishment of a prior conviction for aggravated battery to prove a necessary element of Count 2, no evidence showed Johnson had been convicted of other violent or serious drug felonies such that the jury could have held that additional criminal history against him.[2]

More importantly, even if there had been evidence of other convictions or a suspicion that Johnson was subject to the ACCA, the evidence that Johnson sold crack cocaine as charged in Count 1 and possessed the charged pistol as alleged in Count 2 was too overwhelming for a reasonable jury to have reached any other verdict had the phrase "§ 924(e)" been omitted from the indictment. The Government presented documentary evidence of Johnson's prior aggravated battery conviction and testimony that Johnson's fingerprints taken after his arrest matched the fingerprints of the person serving the sentence for the aggravated battery. It also presented Bridges' testimony that Johnson sold him crack cocaine and a pistol during a controlled buy, and that testimony is corroborated by a video and audio tape recording of the transactions. The Government also presented testimony from Johnson's girlfriend that Johnson told her shortly after

---

[2] After defense counsel opened the door, the Government briefly questioned one law enforcement officer about Johnson's alleged prior participation in a home invasion, but there was no evidence introduced that Johnson was convicted of that crime.

his arrest that he had sold drugs and a handgun to Bridges.   Audio tape recordings of Johnson's phone calls from jail in the weeks after his arrest also showed Johnson telling either his girlfriend or his mother, depending on the call, that he sold drugs and a gun.   Finally, the Government introduced the crack cocaine and the gun Bridges purchased, which bore a serial number that matched the number on the pistol charged in Count 2 of the indictment.   There is no reasonable probability that, in light of this evidence, the jury would have reached another decision had a citation to the ACCA been stricken from the indictment.

Because Johnson suffered no prejudice from his counsel's failure to move to strike the reference to "§ 924(e)," his counsel was not constitutionally ineffective in this regard.

<u>Motion to Remand or Dismiss</u>:   Johnson also faults his counsel for failing to file a motion to remand Johnson's case to state court or to dismiss the case for lack of jurisdiction.   Johnson's argument appears to stem from a misunderstanding of the defense his counsel used in the case.  Counsel's theory of defense was based on the fact that Johnson's charged conduct violated both state and federal law, that under the dual sovereignty doctrine each sovereign was entitled to prosecute him independently, *Heath v. Alabama*, 474 U.S. 82, 88-89 (1985), and that punishments for the state offenses tend to be less severe than federal ones.

In his opening statement, Johnson's counsel introduced the theme that the charges against Johnson should have been resolved in state court, where punishments are lower, but were not resolved there simply because Johnson refused to give evidence against others – that is, to snitch.  He urged the jury to "remand" the matter to state court, meaning the jury should leave the matter to the state courts and not convict Johnson of a federal crime.   Tr. 12.   He did not use the term "remand" as a term of art with a legal meaning but in a colloquial sense.   In his closing argument he again argued that the case should have been prosecuted in state court rather than federal court

9

because of the small amount of drugs involved but that the United States Attorney was punishing Johnson because he refused to snitch.   He further argued that the Government manipulated the evidence to make it appear crack cocaine was involved instead of powder cocaine and attempted to cast doubt on the Government's gun expert's testimony about the origin, and thus the interstate travel, of the gun at issue in the case.   He concluded by asking the jury to "send this back to the state court.   Let the state handle this case."   Tr. 167.

Counsel was not constitutionally ineffective for failing to file a motion asking the Court to remand this case to state court or dismiss it for lack of jurisdiction.   The Court had no basis to do either of those things, as Johnson acknowledges in his § 2255 brief.   Mem. Supp. § 2255 Mot. 10 ("[H]ad his attorney filed a pre-trial motion to dismiss or remand, he would have been denied as frivolous, moot and unconstitutional.").   Johnson was charged with violating federal statutes, which placed the prosecution within the Court's jurisdiction.   18 U.S.C. § 3231.   Because the state and federal governments are separate sovereigns, their prosecutions are distinct, and one cannot be "remanded" or "removed" to the other.   *See, e.g., United States v. Gray*, 382 F. Supp. 2d 898, 901 (E.D. Mich. 2005).

Counsel was also not deficient for asking the jury to leave the conduct charged in this case to state authorities.   Faced with overwhelming evidence of Johnson's sale of drugs and a gun, including recordings of the charged transactions and multiple recorded admissions by the defendant, counsel's defense choices were limited.   His appeal to the jury's sense of general fairness and balance in state and federal prosecution decisions, in addition to his other arguments, was not outside the range of competent counsel.

For the foregoing reasons, the Court finds Johnson's counsel was not constitutionally ineffective in violation of the Sixth Amendment for failing to file these pretrial motion.

Therefore, § 2255 relief is not warranted on Ground 2.

### Ground 3

Conceding Guilt:   In Ground 3, Johnson argues his counsel was constitutionally ineffective because he conceded in his opening statement and closing argument that Johnson sold drugs and possessed a firearm.   He believes this deprived him of the right to persist in his plea of not guilty because it essentially amounted to a guilty plea.

As discussed above, Johnson's counsel's decision regarding trial strategy was reasonable. As a preliminary matter, counsel did not admit Johnson's guilt to the crimes charged in the indictment; he simply conceded certain underlying facts or elements of those crimes.   Although it is clear that counsel could not have forced Johnson to plead guilty without his consent, *see Jones v. Barnes*, 463 U.S. 745, 751 (1983), or represented to the jury that Johnson had decided to plead guilty, *see Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991), that is not what happened. The trial transcript reveals that, in the face of overwhelming evidence that Johnson sold several grams of drugs and a gun, Johnson's counsel conceded those facts.   This was reasonable because it would tend to improve counsel's credibility with the jury, and counsel could still argue about the kind of drug sold, the interstate travel of the gun, and the fairness of a federal prosecution for the defendant's conduct.   This is competent trial strategy when faced with overwhelming evidence supporting certain elements against the defendant.   *See, e.g., United States ex rel. Barbosa v. Hardy*, No. 11 C 1622, 2011 WL 5592845, *4 (N.D. Ill. Nov. 14, 2011).   Even given the concessions made by counsel, the jury still could have found Johnson did not distribute crack cocaine, that the gun did not travel in interstate commerce or that justice simply required an acquittal regardless of the law.   Johnson's counsel was dealt a bad hand, and he played his cards as best he could and definitely within the realm of competent counsel.

Additionally, even if counsel had not conceded that Johnson sold drugs and a gun, the evidence otherwise was so overwhelming that there is not a reasonable probability the jury would have reached any other decision.   Thus, Johnson was not prejudiced by his counsel's argument.

To the extent Johnson may be arguing prejudice from his counsel's performance should be presumed under *United States v. Cronic*, 466 U.S. 648 (1984), he is wrong.   Under *Cronic*, prejudice can be presumed "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."   *Id.* at 659.   This can happen, for example, where counsel concedes a defendant's guilt to a crime charged with no offsetting potential benefit like acquittal of more serious charges or avoiding the death penalty.   *See Silva v. Farrey*, 2005 WL 3479018, *6-*7 (E.D. Wis. Dec. 20, 2005); *compare Underwood*, 939 F.2d at 474 (acknowledging overwhelming evidence of guilt on lesser charge can be sound tactic to avoid conviction of greater offense). However, as noted above, Johnson's counsel did not concede his guilt to the crimes charged and instead contested the elements for which there was not overwhelming evidence against Johnson. Indeed, his cross-examination of the Government's witnesses and his closing statement reflect a valiant effort to convince the jury that the Government had not proved beyond a reasonable doubt that the drug Johnson sold was crack cocaine or the gun he sold travelled in interstate commerce. *Cronic* simply does not apply because counsel *did* subject the prosecution's case to adversarial testing.

<u>Arguing Jurisdiction to the Jury</u>:   This argument is related to Johnson's argument in Ground 2 that counsel should have filed a motion to remand.   As noted above, when speaking to the jury, Johnson's counsel was using the term "remand" not as a term of art but in its colloquial sense, and the context in which he used the term was a reasonable argument to make to the jury. Counsel's performance was therefore not deficient.

Additionally, Johnson has not alleged any prejudice from counsel's request to the jury to "remand" the case to state court. Even if such an argument made using the word "remand" in its technical sense would have been frivolous, Johnson has not explained how omitting the reference would have had a reasonable probability of changing the result of his case.

For these reasons, the Court finds Johnson is not entitled to § 2255 relief on Ground 3.

## IV. Conclusion

For the foregoing reasons, the Court finds that Grounds 1, 2 and 3 do not justify § 2255 relief. The Court **ORDERS** the Government to file a response to the remainder of petitioner's § 2255 motion within **THIRTY DAYS** of the date this order is entered. The Government shall, as part of its response, attach all relevant portions of the record in the underlying criminal case. The petitioner shall have **FOURTEEN DAYS** from the Government's response to file a reply brief.

**IT IS SO ORDERED.**
**DATED:   August 11, 2015**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**